# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SUSANNA ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-05-427-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Susanna Adams requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity (RFC) to perform her past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account her age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on September 13, 1956, and was 48 years old at the time of the administrative hearing. She has a high school education and previously worked as a cook, home health aide, and licensed practical nurse. The claimant alleges she has been unable to work since October 30, 1999, because of back pain, obesity, hypertension, and depression.

**Procedural History**

On October 10, 2003, the claimant filed an application for disability benefits under Title II (42 U.S.C. § 401 *et seq*.). The application was denied. After a hearing on April 21, 2005, ALJ Richard Kallsnick found the claimant was not disabled in a decision dated April 28, 2005. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found the claimant had the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and ten pounds frequently and stand, walk and/or sit for six hours during an eight-hour workday. She had use of her hands except for climbing ladders and needed to occasionally change her positioning, including shifting her weight. The claimant could only balance, squat, crouch, and crawl occasionally. She had mild to moderate chronic pain but could remain alert and attentive (Tr. 21). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there

was work in the regional and national economies she could perform, *e.g.*, short order cook, catering helper, first aide attendant, title formula worker, mail clerk, sewing machine operator, office helper, food order clerk, and information clerk (Tr. 22).

**Review**

The claimant contends that the ALJ erred: (i) by improperly evaluating her obesity; (ii) by finding her depression was not a severe mental impairment; and, (iii) by improperly evaluating her pain. As part of her second contention, the claimant argues that the ALJ failed to discuss probative findings by a consulting psychiatrist. The Court finds this argument persuasive.

The record reveals that in August 2000 the claimant reported to her treating physician Dr. William Anderson, D.O., that her emotions had been "really wacky" and she wanted to cry all the time. He believed the claimant suffered from anxiety and prescribed Effexor (Tr. 212). The claimant took Effexor for some time and then in June 2002 her anxiety increased. Dr. Anderson prescribed Paxil at that time (Tr. 197). At her physical examination with consulting physician Dr. Moheb Hallaba, M.D., the claimant reported she was taking Paxil for depression and indicated she was nervous and depressed. In addition to conditions related to her physical impairments, Dr. Hallaba assessed the claimant with chronic depression (Tr. 179-80).

In January 2004 the claimant underwent a mental status examination with consulting psychiatrist Dr. Mabelle Collins, M.D. The claimant discussed how she injured her back at her prior job and had been diagnosed with degenerative disc disease. She described her pain as constant. Her physician had diagnosed her with anxiety, and she indicated she did not

want to move, felt empty, did not want to see anyone, and had gained weight. The claimant reported there was hardly a day she did not feel "down" and that her energy had decreased and she often felt exhausted after doing "a little bit." She felt worthless, on edge, and had problems with concentration, although she could make decisions. Her children had described her as irritable. The claimant had suffered abuse from an ex-husband, her father had a mental breakdown, and her mother was "nervous and on calming drugs." Examination of the claimant revealed a neat, clean, and well-groomed woman who was socially appropriate. Her thought processes were intact. She felt paranoid about her ex-husband and was obsessive compulsive. She counted letters and numbers and added them up and checked her alarm clock and doors several times at night. The claimant admitted thinking of suicide, but she denied having any type of plan. She felt homicidal toward her ex-husband. She felt depressed sometimes, but her Paxil helped. She felt angry, anxious, and irritable. She performed serial 7s with one mistake, performed simple addition, subtraction, and multiplication, could spell forward and backward, repeated three words immediately and two after five minutes, and knew some past presidents. Dr. Collins noted the claimant experienced some depression and anxiety and took Paxil for her mood. She assessed the claimant with mood disorder due to a general medical condition with major depressive-like episode, by history and assigned the claimant a GAF score of 48 (Tr. 128-32).

In February 2004, non-examining agency psychologist Burnard Pearce, Ph.D., reviewed the evidence and completed a Psychiatric Review Technique ("PRT") form evaluating the claimant for affective disorders and noted the claimant had a medically determinable impairment of mood disorder not otherwise specified. He found that the

claimant had mild limitations in restrictions of activities of daily living and in maintaining social functioning but no limitations in maintaining concentration, persistence, or pace. There was insufficient evidence regarding any episodes of decompensation of extended duration. Dr. Pearce concluded the claimant's mental impairment was not severe, and his determination was affirmed by another agency doctor in April 2004 (Tr. 233-37).

The ALJ considered the claimant's mental impairment and noted: (i) that there was no evidence the claimant had received psychological or psychiatric in-patient or out-patient treatment; (ii) that no treating physician had diagnosed depression or any other mental impairment; and, (iii) that there was no indication the claimant's depression impeded any of her activities of daily living to any significant degree. However, a lack of psychological or psychiatric in-patient or out-patient treatment would not in and of itself support a finding that the claimant's mental impairment was not severe, *see, e. g., Fleetwood v. Barnhart*, 2007 WL 18922, slip op. at * 2 (10th Cir. Jan. 4, 2007) ("[W]e have found no case authority requiring [a claimant] to obtain medical treatment from [a specialist in the mental health profession] before an ALJ can find that she has a severe mental impairment.") [unpublished opinion], and the claimant did in fact receive treatment from her treating physician, *i. e.*, Dr. Anderson prescribed Effexor and Paxil for her anxiety (Tr. 197, 212). Further, consulting physician Dr. Hallaba assessed the claimant with chronic depression and consulting psychiatrist Dr. Collins found she suffered from a mood disorder (Tr. 180, 231).

Finally, the ALJ ignored evidence that the claimant's mental impairment might impede her ability to function in her daily activities and at work, *e. g.*, the claimant's report of symptoms to Dr. Collins, including decreased energy, feelings of worthlessness, suicidal

ideation without a plan, problems with concentration, and obsessive compulsive behavior, *see Thomas v. Barnhart*, 147 Fed.Appx. 755, 759-60 (10th Cir. Sept. 2, 2005) (finding that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements.") [unpublished opinion], and Dr. Collins' assessment that the claimant had a GAF score of 48. *See Oslin v. Barnhart*, 69 Fed.Appx. 942, 947 (10th Cir. 2003) ("A GAF score of fifty or less, . . . *does* suggest an inability to keep a job.") [unpublished opinion] [emphasis added]. *See also Berryhill v. Barnhart*, 64 Fed. Appx. 196, 200 (10th Cir. 2003) [unpublished opinion].[2] Because the ALJ determined the claimant's mental impairment was not severe at step two, this controverting evidence should have been discussed, particularly the GAF score. *See Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) ("In a case like this one, decided at step two, the GAF score should not have been ignored.") [unpublished opinion]. *See also Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984); *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.") [quotation omitted].

---

[2] The Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) indicates that a GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [unpublished opinion].

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's mental impairment. If the ALJ determines the claimant's mental impairment is severe at step two, he should then include any limitations from such an impairment in the RFC and re-determine whether the claimant is disabled.

## Conclusion

For the reasons set forth above, the ruling of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further findings consistent with this Opinion and Order.

**DATED** this 23rd day of March, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**